**In re: FLORIDA BRETHREN HOMES, INC., d/b/a the Palms of Sebring, Debtor.**

**Bankruptcy No. 88–01262–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

July 20, 1988.

Daniel L. Bakst, West Palm Beach, Fla., for Creditors' Committee.

K. Rodney May, Foley & Lardner, van den Berg, Gay, Burke, Wilson & Arkin, Orlando, Fla., for debtor.

Mahoney, Adams, Milam, Surface & Grimsley, P.A. Paul I Perez, Jacksonville, Fla., for Barnett Banks Trust Co., N.A.

Michael L. Berry, Dept. of Ins., Tallahassee, Fla.

## ORDER DENYING CREDITOR'S MOTION TO DISMISS

THOMAS C. BRITTON, Chief Judge.

A creditor has moved (CP 17) to dismiss this chapter 11 case under 11 U.S.C. § 109(b) and (d). These provisions disqualify "a domestic insurance company" from bankruptcy. The debtor has responded (CP 28) and the motion was heard May 31. The parties and the Florida Department of Insurance have each filed briefs. I now agree with the debtor that the motion should be denied.

The relevant facts are stipulated. (CP 28a).

The debtor, a non-profit church-controlled corporation, built and has operated for 27 years a continuing care facility in Sebring called The Palms. The facility was improved with construction financed by tax exempt bonds issued by the Highlands County Health Facility Authority. It consists of 116 residential units and a 120–bed health center in three buildings.

Until last year, the premises were occupied exclusively by persons who entered into "Life Care Agreements" with the debtor. In return for an entrance fee of from $29,000 to $69,000, depending upon the residential unit selected, and monthly maintenance fees, which presently average $875, the debtor agreed to provide housing and

appropriate levels of health care for the rest of the tenant's life, except for the cost of required medication, therapy, the fees of physicians, and some other ancillary health services. The debtor also agreed to a sliding scale of partial refunds of the entrance fee for tenants who died within the first four years.

In April 1987, one year before it filed this bankruptcy, the debtor stopped selling the life care contracts and began leasing its units.[1] On the date of bankruptcy, there were 70 Life Care Agreements still in effect. Including both kinds of occupants, a total of 106 units and 117 health center beds were occupied.

The debtor's facility is licensed, supervised and regulated by the Florida Department of Health and Rehabilitative Services and also, under *Fla.Stat.* Ch. 651, by the Florida Department of Insurance. This statute, enacted in 1977 as the Life Care Act, applies to all "continuing care providers"—those who agree, in return for an entrance fee, to provide shelter, food, and either nursing care or personal services "continuing care".

Movant is the trustee under a trust indenture pursuant to which tax exempt revenue bonds were issued to build the facility.

The issue, whether an entity licensed under the Florida Life Care Act or any similar State statute is a "domestic insurance company" within the purview of § 109(b)(2) [2], is a federal question which has not yet been considered in any reported decision, although one other Florida licensee was in bankruptcy in the Middle District of Flor-

ida and a second was administered in the Southern District of Ohio.

The classification of an entity by State law, the "state classification test" though persuasive, is not conclusive. 1 *Collier on Bankruptcy* (15th ed. 1988 Rev.) ¶ 109.02 and cases collected at notes 13 and 14.

Until 1985, the word "insurance" appeared nowhere in the 16 pages of the Florida Statute, except in the name of the regulatory agency. In 1985, the following "clarifying provision" was added:

> "Nothing in the Florida Insurance Code or this chapter shall be deemed to authorize any provider of a continuing care facility to transact any insurance business other than that of *continuing care insurance* or otherwise to engage in any other type of insurance unless it is authorized under a certificate of authority issued by the department under the provisions of the Florida Insurance Code." *Fla.Stat.* § 651.014. (Emphasis added).

It is, of course, relevant that this legislatively classified business is expressly prohibited from transacting any insurance business as that term is generally understood [3] and as it is used in all other Florida statutes.[4] However, without deciding the point, which is not essential to this decision, I accept movant's contention that the words underscored above constitute a legislative classification of this debtor in the insurance business.

Turning to the federal statute with which we are concerned, § 109(b), the legislative history though sparse is in this instance decisive:

---

1. The debtor has not argued that its suspension of sales is significant. I agree. So long as it continues to perform a single continuing care contract, it remains subject to the Florida statute.

2. The statute precludes bankruptcy by:
   "a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h))."

3. In *In re Prudence Co., Inc.*, 79 F.2d 77, 80 (2nd Cir.1935), the court considered that a mortgage guarantor was not "in common parlance" an insurance company and held the debtor not excluded from bankruptcy under the former Act.

4. Insurance is defined in *Fla.Stat.* § 624.02:
   " 'Insurance' is a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies."

"Banking institutions and insurance companies are excluded from liquidation under the bankruptcy laws *because they are bodies for which alternate provision is made for their liquidation under various regulatory laws.* Conversely, when a foreign bank or insurance company is not engaged in the banking or insurance business in the United States, then those regulatory laws do not apply and the bankruptcy laws are the only ones available for liquidation of any assets found in the United States." H.R. Rep. 595 95th Cong., 1st Sess 318 (1977); S.Rep. 989 95th Cong., 2d Sess. 31 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5817, 6275 (Emphasis added).

Although the Florida statute provides an alternate provision for liquidation of continuing care facilities, *Fla.Stat.* § 651.114(5), that alternate provision is not applicable in the case of this debtor, because the statute contains the following exception:

"The rights of the department described in this section [§ 651.114] are subordinate to the rights of a trustee pursuant to the terms of a resolution, ordinance, or indenture of trust securing bonds or notes issued to finance a facility." *Fla.Stat.* § 651.114(7).

As has already been noted, movant bank trust company is a trustee under a trust indenture securing the bonds of the Highlands County Health Facility Authority.

Section 109(b) was never intended to exempt from the federal provision of the Bankruptcy Code an entity for which no alternate provision for liquidation is made under state regulatory law.

Statutory provisions providing exceptions from regulatory statutes should be construed strictly. As stated in *Piedmont & Northern Ry. v. ICC*, 286 U.S. 299, 311, 52 S.Ct. 541, 545, 76 L.Ed. 1115 (1932):

"The ... Act was remedial legislation and should therefore be given a liberal interpretation; but for the same reason exemptions from its sweep should be narrowed and limited to effect the remedy intended."

This rule of statutory construction was quoted and followed in *Israel–British Bank (London) Ltd. v. Federal Deposit Insurance Corp.*, 536 F.2d 509, 513 (2nd Cir.), *cert. denied*, 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976), where the court construed the exclusion of "banking corporations" under the former Bankruptcy Act not to exclude *foreign* banks.

I find that this debtor is not a domestic insurance company as that term is used in § 109(b).[5]

It is not necessary to determine whether a continuing care provider in this State would be ineligible for bankruptcy if it, unlike this debtor, were subject to Florida's provisions for the liquidation of insurance companies. Therefore, I do not undertake that issue.

---

5. The Florida statute explicitly recognizes that at least some continuing care providers, which are subject to its provisions, may become "a debtor in a case under the United States Bankruptcy Code". *Fla.Stat.* § 651.023(1)(c).