**In re FLORIDA BRETHREN HOMES, INC., d/b/a The Palms of Sebring, Debtor.**

**Bankruptcy No. 88–01262–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Feb. 8, 1989.

Daniel L. Bakst, West Palm Beach, Fla., for Creditors' Committee.

K. Rodney May, Foley & Lardner, Van den Berg, Gay, Burke, Wilson & Arkin, Orlando, Fla., for debtor.

Michael J. Bittman, Dempsey and Goldsmith, P.A., Winter Park, Fla., for accountants for debtor (Lovelace, Roby and Co.)

Michael G. Williamson, Maguire, Voorhis & Wells, P.A., Orlando, Fla., for the Official Bondholders Committee.

Healthcare Financial Consultants for the official Bondholders Committee Coopers & Lybrand c/o Atty. Michael G. Williamson, Orlando, Fla.

## ORDER ON FEE APPLICATIONS

THOMAS C. BRITTON, Chief Judge.

This debtor's chapter 11 plan was accepted by its creditors and was confirmed several weeks ago. (CP 132). At the confirmation hearing, held November 18, 1988, all fee applications were also heard. This Order addresses those applications.

### History of the Case

The debtor has operated a non-profit church-controlled continuing care facility (The Palms) in Sebring for 27 years. Five years ago it was substantially expanded and improved with tax exempt bonds issued by the Highlands County Health Facility Authority. It now consists of 116 residential units and a 120–bed health center in three buildings.

Until 1987, the facilities were occupied exclusively by persons who entered into "Life Care Agreements" paid for with entrance fees and monthly maintenance. The sales of the Agreements declined and, as a result, the occupancy never reached expectations, and in 1988 the debtor defaulted on its bonds.

The Florida Department of Insurance[1] sought the appointment of a State court receiver. The debtor immediately filed this case on April 5, 1988, staying the State action. The motion of Barnett Bank, the bondholders' trustee, for the dismissal of this case under 11 U.S.C. § 109(d) was denied. *In re Florida Brethren Homes, Inc.*, 88 B.R. 445 (Bankr.S.D.Fla.1988). This issue, a point of first impression, has been the only significant litigation in this case.

The debts total $17.3 million of which 91% is owed to the bondholders. The assets fall well short of the debt. The debtor's amended plan, the one confirmed by this court, reduces the interest on the bonded debt from 12.89% to 7% and 8%. The debtor remains obligated to its remaining life care tenants as well as its other tenants. Unsecured creditors will be paid about 70%.

After bankruptcy, the sale of life care contracts was replaced by leases. Occupancy is up. Expenses are down. Although the future is far from certain, the prospects are reasonable that the reorganized debtor will meet the obligations of its plan. If so, everyone connected with this case will be far better off than they would have been either under liquidation or a protracted and expensive receivership. This reorganization, completed in less than nine months, therefore, is a credit to the debtor, the debtor's attorney, and the other parties and professionals who have made it possible.

■ We turn now to the fee applications, which presently total $251,916. None of which has been opposed.[2]

### The Lodestar

Since *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), judicial review of fee applications focuses on the lodestar: the product of the hours reasonably expended times a reasonable hourly rate, adjusted for the results

---

**1.** In Florida, such facilities are licensed, supervised and regulated by both the Department of Health and Rehabilitative Services and, under *Fla.Stat.* Ch. 651, by the Department of Insurance.

**2.** The absence of objections is not evidence of value and affects in no way the court's duty to examine carefully all bankruptcy fee applications to prevent excessive charges. *York International Bldg., Inc. v. Chaney,* 527 F.2d 1061, 1068 (9th Cir.1975); *Matter of Nor–Les Sales, Inc.,* 32 B.R. 900, 902 (Bankr.E.D.Mich.1983) (collecting some of the precedent on this point).

obtained. Our Circuit, in *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1298–1304, (11th Cir.1988), has recently considerably illuminated this process.

### Expenses

■ I have denied reimbursement for certain in-house charges (for copying and secretarial overtime) and certain expenses (Lexis and postage). The excluded expenses have been considered a part of the applicants' overhead in evaluating the hourly fee charges.

### Debtor's Counsel

■ Debtor's counsel has applied for fees of $134,229 and $7,596 expenses. (CP 77, 94, 117, 130). Like every other applicant, this is a fully qualified firm with a well-deserved reputation. It has done an excellent and completely successful job. I do not question the reasonable necessity for the time it has spent and its average hourly rate is reasonable.

However, its last two applications came after the October 5 deadline set by this court's Order of September 13. (CP 83). This deadline was set to give creditors a reasonable opportunity to challenge the applications at the statutorily required [3] hearing held November 18.

Without a deadline, creditors would be required to vote and this court would be required to evaluate the feasibility of the reorganization plan with an open-ended liability for administrative expenses, which enjoy first priority.[4]

For the foregoing reason and solely for that reason, I limit this firm's administrative priority payment to a fee of *$100,000*,[5] the lesser of (a) its last timely application (CP 94 filed October 5) and (b) the amount

3. § 330(a).

4. § 503(b), § 507(a)(1).

5. This firm received a retainer of $50,000 to be applied against this fee.

6. For example, in a $655 million chapter 11 case resolved here in late 1986, the average hourly charge by eight law firms from around the country ranged from $122 (Milbank, Tweed in

stated in the Notice of Hearing On Applications For Compensation (CP 108) which was sent to all creditors with the amended plans and disclosure statements and the creditor's ballot.

The last timely application (CP 94 filed October 5) was for $105,847 which included $40,000 estimated for future services, principally the preparation and issuance of refunding bonds. The average charge for the time spent to date (502.5 hours) was $131.06. The total fee stated in the Notice of Hearing was $100,000.

For the balance of its compensation, this firm may look to its client, to be paid from future income at such times and in such amounts as will not impair the debtor's ability to meet the obligations of its plan.

This applicant is also entitled to expenses in the amount of *$2,016*.

### Bond Holders' Committee Counsel

■ A bond owners' committee was appointed August 3 (CP 49) and its employment of counsel was authorized August 24 (CP 66). This firm's latest application (CP 113) totals $53,155 for 402.2 hours, which includes an estimated 50 additional hours. However, its last timely application was for $40,569 to cover 265.1 hours, which included an estimated 100 additional hours. This application did not exceed the $41,000 fee stated in the Notice of Hearing.

The requested fee represents an average hourly charge of $153.03. This sum exceeds the prevailing hourly charge for like services by equally qualified bankruptcy specialists at this time, in this District. The fee of the debtor's counsel ($131) is more representative.[6] The work of that firm was as effective, if not more effective, than this firm's work. In fact, the bond

New York) to $159 (Troutman, Sanders in Atlanta) and averaged $134, which was the charge made by a noted San Francisco firm (Murphy, Weir) which presented the successful plan.

Of course, the time of some of the individual attorneys was worth more than this sum, but not all of the work done required the greatest skill the firm possessed. It could have been and should have been entrusted to less costly hands, and did not become more valuable because it was done by the most experienced attorney.

owners abandoned the plans prepared by their counsel and supported the debtor's amended plan.

There is no good reason in the record before me why this debtor should be forced to pay any higher rate of compensation for essentially comparable services rendered in this case by law firms hired by its creditors than it is paying its excellent law firm.

I find that reasonable compensation from this debtor for the services of bond owners' counsel is *$34,728* ($131 × 265.1 hours). It must look to its client, the committee, for any additional compensation.

This applicant is also entitled to expenses in the amount of *$221*.

### Creditors' Committee Counsel

The creditors' committee was appointed May 19 (CP 26) and its employment of counsel was authorized August 3 (CP 49). That firm's application (CP 80) was timely and is well within the amount stated in the Notice of Hearing. It asks $10,000 for 67.8 hours, which includes 40 hours of estimated future services.

In this reorganization the unsecured creditors were relatively insignificant, representing less than 1% of the total debt. Of necessity, the committee and its very able counsel played a corresponding role. All things considered, the result achieved for this class was excellent.

However, this firm's average hourly charge for its services is $147.49. For the reasons explained earlier, I find that reasonable compensation for this firm from the debtor for its services in this case is *$8,881* ($131 × 67.8 hours). For any additional compensation, it must look to its client, the committee.

It asked for no expenses.

### Debtor's Accountant

This firm did the debtor's work before bankruptcy. Its authorization to represent the debtor after bankruptcy was requested April 13 (CP 7a) but was not authorized until May 9 (CP 21). This applicant has been denied administrative priority compensation for post-petition services before it filed its application as required by § 327(a).

This firm never filed a final fee application. All of its seven fee applications (CP 36, 41, 60, 80, 84, 118, 130(b)) are for interim fees under § 331. In accordance with its last timely application (CP 84), it was awarded $29,430 on October 7 (CP 99), two days after the deadline for final fee applications. It is entitled to nothing more from this court as an administrative priority. For its continuing post-petition services, it must look to the debtor for payment out of future earnings, subject to the debtor's obligations under its confirmed plan.

### Bondholders' Committee Accountant

The only (and timely) application of Coopers & Lybrand, the accountant for the bondholders' committee, is for a fee of *$12,520* for 111 hours as consultants. The average hourly charge ($112.79) is reasonable. It is approved.

It is also entitled to reimbursement in the amount of *$1694.53* for its expenses.

DONE and ORDERED.